KAREN P. HEWITT
United States Attorney
DAVID D. LESHNER
Assistant United States Attorney
California State Bar No. 207815
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7163
Email: david.leshner@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08-CR-2431-JLS |
| Plaintiff, | ) ) | DATE:       August 29, 2008 |
| v. | ) ) | TIME:       2:00 p.m. |
| PAUL MICHAEL PADILLA (1), EMMANUEL BAUTISTA (2), MARLO WILLIAM RINES (3), JOSE RAUL AYALA (4), WILLIAM GOMEZ-GARCIA (5), | ) ) ) ) ) ) | **UNITED STATES' CONSOLIDATED RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS TO:**<br><br>**(1)    COMPEL DISCOVERY;** |
| Defendants. | ) ) ) | **(2)    DISCLOSE CONFIDENTIAL SOURCE;** |
| | ) ) | **(3)    ALLOW ATTORNEY VOIR DIRE; AND** |
| | ) ) | **(4)    GRANT LEAVE TO FILE FURTHER MOTIONS** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and David D. Leshner, Assistant United States Attorney, and hereby files its response and opposition to defendants' motions. Said response and opposition is based upon the files and records of this case together with the attached memorandum of points and authorities.

/ / /

/ / /

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**STATEMENT OF THE CASE**

On July 24, 2008, defendants Paul Michael Padilla, Emmanuel Bautista, Marlo William Rines, Jose Raul Ayala and William Gomez-Garcia were arraigned on a one-count Indictment charging them with conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1) and 846.  Defendants entered pleas of not guilty.

**II**

**STATEMENT OF FACTS**

In 2008, Padilla and Rines contacted Ayala regarding their desire to purchase multiple kilograms of heroin.  Ayala  contacted Gomez-Garcia who, in turn, contacted Emmanuel Bautista in San Diego, CA to obtain the heroin.  Bautista agreed to obtain the heroin from a source of supply for distribution to the buyers.

Padilla and Rines reside in Oregon.  Ayala and Gomez reside in the State of Washington. On or about July 11, 2008, Ayala and Gomez traveled by airplane from Portland, OR to San Diego to participate in the heroin purchase.  Gomez rented a car in his own name in San Diego.  Also on or about July 11, 2008, Padilla and Rines traveled from Oregon to San Diego in a car belonging to a friend of Rines'.  The friend had loaned the car to Rines because he had told her he was going to go hiking in Portland, OR.

On July 12, 2008, Bautista met with his source of supply in a car in a parking lot in San Diego.[1]  During that meeting, Bautista and the source of supply negotiated a purchase price for the buyers of $16,000 per kilogram of heroin.  Padilla, Rines, Gomez, Ayala and Bautista subsequently met in the parking lot of a nearby McDonald's restaurant.  Ayala took a bag from Padilla's and Rines' car and placed it in Ayala's and Gomez' rental car.  Padilla and Bautista traveled across the parking lot to meet with Bautista's source of supply a second time.  Gomez, Rines and Ayala

---

[1] The source of supply is a confidential source ("CS").

2

waited outside the McDonald's restaurant.  Agents arrested all five defendants when Padilla took possession of a bag containing what he believed to be multiple kilograms of heroin.

### III

### DEFENDANTS' MOTIONS

Defendants Bautista, Rines, Ayala and Gomez-Garcia have filed motions to compel discovery and for leave to file further motions.  Rines and Ayala have filed motions to compel disclosure of the CS.  Ayala also moves for attorney-conducted voir dire.  Padilla has not filed motions.

**A.     Motions For Discovery**

The Government will continue to fully comply with its discovery obligations.  To date, the Government has provided defendants with the report of their apprehension, summaries of any statements, photographs of their arrest and a video.[2]

In an attempt at simplification, this memorandum will address two specific areas of discovery:  (1) items which the Government either has provided or will voluntarily provide and (2) items demanded and discussed by Defendant which go beyond the strictures of Rule 16 and are not discoverable.

**1.     Items which the Government has provided or will voluntarily provide.**

a.     The Government will disclose to each Defendant and make available for inspection, copying or photographing:  any relevant written or recorded statements made by that defendant, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government; and that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a Government agent.  The

---

[2] The Government also has produced an audio recording, although that recording is almost entirely inaudible.

Government also will disclose to each defendant the substance of any other relevant oral statement made by that defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be a Government agent if the Government intends to use that statement at trial.

b.    The Government will permit each defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the Government, and which are material to the preparation of the defendant's defense or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to the defendant;[3/]

c.    The Government will permit each defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are in the possession, custody or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government, and which are material to the preparation of his defense or are intended for use by the Government as evidence during its case-in-chief at trial;[4/]

d.    The Government has furnished to each defendant a copy of his prior criminal record, which is within its possession, custody or control, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the Government;

/ / /

[3/] Rule 16(a)(1)(C) authorizes defendants to examine only those Government documents material to the preparation of their defense against the Government's case-in-chief.  United States v. Armstrong, 517 U.S. 456, 463 (1996).  Rule 16 does not require the disclosure by the prosecution of evidence it intends to use in rebuttal.  United States v. Givens, 767 F.2d 574, 583 (9th Cir. 1984).

[4/] The Government need not "disclose every single piece of paper that is generated internally in conjunction with scientific tests."  United States v. Iglesias, 881 F.2d 1519, 1524 (9th Cir. 1989).

4

e.     The Government will disclose the terms of all agreements (or any other inducements) with cooperating witnesses, if any are entered into;

f.     The Government may disclose the statements of witnesses to be called in its case-in-chief when its trial memorandum is filed;[5/]

g.     The Government will disclose any record of prior criminal convictions that could be used to impeach a Government witness prior to any such witness' testimony;

h.     The Government will disclose in advance of trial the general nature of other crimes, wrongs, or acts of each defendant that it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence;

i.     The Government acknowledges and recognizes its continuing obligation to disclose exculpatory evidence and discovery as required by Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), the Jencks Act and Rules 12 and 16 of the Federal Rules of Criminal Procedure, and will abide by their dictates.[6/]

/ / /

---

[5/] Production of these statements is governed by the Jencks Act and need occur only after the witness testifies on direct examination. United States v. Mills, 641 F.2d 785, 789-790 (9th Cir. 1981); United States v. Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978). For Jencks Act purposes, the Government has no obligation to provide the defense with statements in the possession of a state agency. United States v. Durham, 941 F.2d 858, 861 (9th Cir. 1991). Prior trial testimony does not fall within the scope of the Jencks Act. United States v. Isigro, 974 F.2d 1091, 1095 (9th Cir. 1992). Further, an agent's recorded radio transmissions made during surveillance are not discoverable under the Jencks Act. United States v. Bobadilla-Lopez, 954 F.2d 519, 522-23 (9th Cir. 1992). The Government will provide the grand jury transcripts of witnesses who have testified before the grand jury if said testimony relates to the subject matter of their trial testimony. Finally, the Government reserves the right to withhold the statement of any particular witness it deems necessary until after the witness testifies.

[6/] Brady requires the Government to produce all evidence that is material to either guilt or punishment. The Government's failure to provide the information required by Brady is constitutional error only if the information is material, that is, only if there is a reasonable probability that the result of the proceeding would have been different had the information been disclosed. Kyles v. Whitley, 514 U.S. 419 (1995). However, neither Brady nor Rule 16 require the Government to disclose inculpatory information to the defense. United States v. Arias-Villanueva, 998 F.2d 1491 (9th Cir. 1993).

1    **2.      Items which go beyond the strictures of Rule 16**

2         **a.      Defendants' requests for Brady information**

3         It is well-settled that prior to trial, the Government must provide a defendant in a criminal

4    case with evidence that is both favorable to the accused and material to guilt or punishment.

5    Pennsylvania v. Richie, 480 U.S. 39, 57 (1987); United States v. Agurs, 427 U.S. 97 (1976); Brady

6    v. Maryland, 373 U.S. 83, 87 (1963).   As the Supreme Court has explained, "a fair analysis of the

7    holding in Brady indicates that implicit in the requirement of materiality is a concern that the

8    suppressed evidence may have affected the outcome of the trial."   Agurs, 427 U.S. at 104.

9    "[E]vidence is material only if there is a reasonable probability that, had the evidence been

10   disclosed to the defense, the result of the proceeding would have been different."   United States v.

11   Bagley, 473 U.S. 667, 682 (1985) (emphasis added).   A "reasonable probability" is a probability

12   sufficient to undermine confidence in the outcome.   Richie, 480 U.S. at 57 (citation omitted).

13        The Supreme Court has repeatedly held that the Brady rule is not a rule of discovery; rather,

14   it is a rule of fairness and is based upon the requirement of due process.   Bagley, 473 U.S. at 675,

15   n. 6.  The Supreme Court's analysis of the limited scope and purpose of the Brady rule, as set forth

16   in the Bagley opinion, is worth quoting at length:

17        Its purpose is not to displace the adversary system as the primary means by which

18        truth is uncovered, but to ensure that a miscarriage of justice does not occur.

19        [footnote omitted].  Thus, the prosecutor is not required to deliver his entire file to

20        defense counsel, but only to disclose evidence favorable to the accused that, if

21        suppressed, would deprive the defendant of a fair trial: For unless the omission

22        deprived the defendant of a fair trial, there was no constitutional violation requiring

23        that the verdict be set aside; and absent a constitutional violation, there was no

24        breach of the prosecutor's constitutional duty to disclose . . . but to reiterate a critical

25        point, the prosecutor will not have violated his constitutional duty of disclosure

26        unless his omission is of sufficient significance to result in the denial of the

27        defendant's right to a fair trial.

28                                             6

Id. at 675 (emphasis added, citation omitted).

**b.      Disclosure of witness information**

The Government will provide Defendant with the following items prior to any witness' trial testimony:

(1)      The terms of all agreements (or any other inducements) it has made with cooperating witnesses, if they are entered into;

(2)      All relevant exculpatory evidence concerning the credibility or bias of Government witnesses as mandated by law; and,

(3)      Any record of prior criminal convictions that could be used to impeach a Government witness.

The Government opposes disclosure of rap sheet information of any Government witness prior to trial.  See United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  Furthermore, any uncharged prior misconduct attributable to Government witnesses, all promises made to and consideration given to witnesses by the Government, and all threats of prosecution made to witnesses by the Government will be disclosed if required by Brady and Giglio.

**c.      Agents' rough notes**

Although the Government has no objection to the preservation of agents' handwritten notes, the Government objects to their production at this time.  If during any evidentiary proceeding, certain rough notes become relevant, these notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980); United States v. Kaiser, 660 F.2d 724, 731-32 (9th Cir. 1981).

/ / /

/ / /

/ / /

7

### d.     Government reports, summaries and memoranda

Rule 16 provides, in relevant part:

> [T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or <u>other government agent in connection with the investigating or prosecuting of the case</u>.

Rule 16(a)(2).  This subsection exempts from disclosure documents prepared by government attorneys and agents that would otherwise be discoverable under Rule 16.  <u>United States v. Fort</u>, 472 F.3d 1106, 1110 & n.2 (9th Cir. 2007).

As expressed previously, the Government recognizes its obligations pursuant to <u>Brady</u>, <u>Giglio</u>, Rule 16, and the Jencks Act.[7]  But the Government shall not turn over internal memoranda or reports which are properly regarded as work product exempted from pretrial disclosure.[8]  Such disclosure is supported neither by the Rules of Evidence nor case law and could compromise other areas of investigation still being pursued.

Notwithstanding Rule 16(a)(2), the Government has produced the report pertaining to defendants' apprehension.

### e.     Addresses and phone numbers of Government witnesses

While the Government <u>may</u> supply a tentative witness list with its trial memorandum, it objects to providing home addresses and telephone numbers.  <u>See</u> <u>United States v. Sukumolachan</u>, 610 F.2d 685, 688 (9th Cir. 1980); <u>United States v. Conder</u>, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses).

/ / /

/ / /

---

[7] Summaries of witness interviews conducted by Government agents are not Jencks Act statements.  <u>United States v. Claiborne</u>, 765 F.2d 784, 801 (9th Cir. 1985).

[8] The Government recognizes that the possibility remains that some of these documents may become discoverable during the course of the trial if they are material to any issue that is raised.

1

### f.    Personnel files of federal agents

2    Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and United States v.

3    Cadet, 727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its

4    federal law enforcement witnesses and to "disclose information favorable to the defense that meets

5    the appropriate standard of materiality . . . ."  Cadet, 727 F.2d at 1467-68.  Further, if counsel for

6    the United States is uncertain about the materiality of the information within its possession, the

7    material will be submitted to the court for in-camera inspection and review.  In this case, the

8    Government will ask the affected law enforcement agency to conduct the reviews and report their

9    findings to the prosecutor assigned to the case.

10    In United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held that the

11    Assistant U.S. Attorney assigned to the prosecution of the case has no duty to personally review

12    the personnel files of federal law enforcement witnesses.  In Jennings, the Ninth Circuit found that

13    the present Department of Justice procedures providing for a review of federal law enforcement

14    witness personnel files by the agency maintaining them is sufficient compliance with Henthorn.

15    Id.  In this case, the Government will comply with the procedures as set forth in Jennings.

16    Finally, the Government has no duty to examine the personnel files of state and local

17    officers because they are not within the possession, custody or control of the Federal Government.

18    United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

19

### g.    Reports of witness interviews

20    Reports generated in connection with a witness's interview session are only subject to

21    production under the Jencks Act if the witness signed the report or otherwise adopted or approved

22    the contents of the report.  See 18 U.S.C. § 3500(e)(1); United States v. Miller, 771 F.2d 1219,

23    1231-31 (9th Cir. 1985) ("The Jencks Act is, by its terms, applicable only to writings which are

24    signed or adopted by a witness and to accounts which are substantially verbatim recitals of a

25    witness' oral statements.");  United States v. Friedman, 593 F.2d 109, 120 (9th Cir. 1979)

26    (interview report containing a summary of a witness' statements is not subject to discovery under

27    the Jencks Act); United States v. Augenblick, 393 U.S. 248, 354 (1969) (rough notes of witness

28

9

interview not a "statement" covering entire interview).  Indeed, "both the history of the [Jencks Act] and the decisions interpreting it have stressed that for production to be required, the material should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context."  United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992).

**h.    Expert witnesses**

The Government will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the Government intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705 three weeks prior to the scheduled trial date.

**i.    Other discovery requests**

To the extent that the above does not answer all of defendants' discovery requests, the Government opposes the motion on the grounds that there is no authority requiring the production of  such material.

**B.    Motion To Disclose Confidential Source**

Defendants Ayala and Rines move for disclosure of the CS.  As an initial matter, it is critical to note that neither Ayala nor Rines had any interaction or dealings with the CS.  The only defendants who had any interaction or dealings with the CS are defendant Bautista and, to a lesser extent, defendant Padilla.

It is well-settled that the Government "has a qualified privilege to withhold from disclosure the identity of persons who furnish information" to law enforcement.  United States v. Amador-Galvan, 9 F.3d 1414, 1417 (9th Cir. 1993).  Generally, a confidential source's identity need only be revealed if it would "be relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."  Roviaro v. United States, 353 U.S. 53, 60-61 (1957).  The defendant "bears the burden of demonstrating the need for disclosure, and a mere suspicion that the information will prove helpful will not suffice."  United States v. Williams, 898 F.2d 1400, 1402 (9th Cir. 1990) (citation omitted).  The court "must hold an in camera hearing" if the defendant

"makes a minimal threshold showing that disclosure would be relevant to at least one defense." United States v. Henderson, 241 F.3d 638, 645 (9th Cir. 2001) (internal quotation marks omitted).

Even where such a showing is made, at the hearing the defendants stills "bears the burden of demonstrating the need for disclosure . . . ." Williams, 898 F.2d at 1402. That is, he must establish the confidential source's identity would "be relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Roviaro, 353 U.S. 53 at 60-61. This assessment requires that the court "balance 1) the extent to which disclosure would be relevant and helpful to the defendant's case, and 2) the government's interest in protecting the identity of a particular informant." United States v. Spires, 3 F.3d 1234, 1238 (9th Cir. 1993).

Here, both Rines and Ayala have failed to make a sufficient showing that disclosure of the CS is relevant to their defense. Neither of these defendants claims or suggests that he ever met with the CS, much less that the CS has relevant or discoverable information concerning these two defendants' role in the conspiracy. That the CS may have interacted with other co-defendants does not ipso facto provide a basis for Rines and Padilla to seek disclosure of the CS's identity. See Williams, 898 F.2d at 1402 (no need shown in part because informant "was not personally acquainted with" defendant).

Should the Government determine that it will call the CS as a witness at trial, it will provide prior to trial any impeachment information required to be produced under Giglio v. United States, 405 U.S. 150 (1972). Unless and until defendants make an adequate showing, however, the Court should decline to order disclosure of the CS.

**C.    Motion For Attorney Voir Dire**

The Government does not oppose defendant Ayala's motion for attorney-conducted voir dire.

**D.    Motions For Leave To File Further Motions**

The Government does not oppose granting leave to bring further motions so long as those motions are based on evidence (if any) not yet produced in discovery.

/ / /

11

1

## IV

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court rule on defendants' motions as set forth above.


DATED: August 22, 2008                    Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ David D. Leshner
DAVID D. LESHNER
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

12

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08-CR-2431-JLS |
| Plaintiff, | ) ) | |
| v. | ) ) | CERTIFICATE OF SERVICE |
| PAUL MICHAEL PADILLA, et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, David D. Leshner, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the UNITED STATES' CONSOLIDATED RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS TO: (1) COMPEL DISCOVERY;(2) DISCLOSE CONFIDENTIAL SOURCES; (3) ALLOW ATTORNEY VOIR DIRE; AND (4) GRANT LEAVE TO FILE FURTHER MOTIONS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

Timothy Garrison, Esq.
Wendy Gerboth, Esq.
David Bartick, Esq.
Robert Garcia, Esq.
Stephen Peterson, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 22, 2008.

/s/ David D. Leshner
DAVID D. LESHNER

13